IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SAMSUNG CELL PHONE, IMEI 351103370213115 | Case No. 2:25-mj-00146 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Joseph V. Reed, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), assigned to the Charleston, West Virginia, Field Office. I have been so employed for approximately five years. As such, I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), and am engaged in enforcing the criminal laws.

2. I hold a Bachelor of Science Degree in general biology from the University of Charleston located in Charleston, West Virginia. Prior to working for ATF, I successfully completed the 16-week basic class training conducted at the West Virginia State Police Academy, certifying me as a law enforcement officer in the State of West Virginia. While employed as a Natural Resources Police Officer in West Virginia, I prepared and executed search warrants on a telecommunications company, social media company, and digital storage device. As an ATF Special Agent, I have prepared and executed federal search warrants for information located on mobile devices and on cloud-based systems.

3. I completed the Criminal Investigator Training Program ("CITP") at the Federal Law Enforcement Training Center in Glynco, Georgia. I also completed Special Agent Basic Training ("SABT") at the ATF National Academy. I have training, knowledge, and experience in preserving, extracting, and processing electronic evidence. I received 40 hours of formal training by the ATF Digital Forensics Branch ("DFB") and learned various methods to preserve, extract, process, and report the results of digital evidence extracted from computers, cellular devices, and other electronic media. I am an ATF Digital Media Collection Specialist ("DMCS") and have completed the necessary requirements certifying me as a Cellebrite Certified Operator ("CCO") and Cellebrite Certified Physical Analyst ("CCPA"). I received 32 hours in Advanced Drone Forensic Analysis. I have received extensive training, both formal and on-the-job, in the provisions of the federal firearms laws administered under Titles 18 and 26 of the United States Code and the federal narcotics laws administered under Title 21 of the United States Code.

4. I have participated in numerous federal criminal investigations involving the federal firearms and narcotics laws, including the illegal possession, transportation, distribution, and use of controlled substances, as well as the criminal possession, use, and trafficking of firearms and explosives.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, I believe there is probable cause to issue a search warrant for the Samsung cell phone identified in Attachment A (hereinafter the "Subject Device") to seek evidence related to violations of 18

U.S.C. § 922(o) (unlawful possession of a machinegun) and 26 U.S.C. § 5861(c) (possession of a firearm made in violation of the National Firearms Act). I respectfully request the issuance of a search warrant for the Subject Device in order to search for and seize the evidence (particularly described in Attachment B) contained therein.

## PROBABLE CAUSE

7. In October 2024, ATF received information that Joshua Matthew WADE ("WADE") was in possession of an assault-style rifle that he had converted into a machinegun. The tip was based on a series of TikTok videos posted by an account that appeared to belong to WADE. I received the tip and accompanying TikTok videos on November 15, 2024. I reviewed the videos, and based on my training, knowledge, and experience, the firearm(s) in the videos appeared to be a machinegun.

8. The following is a summary of what I observed during my review of the information associated with the tip:

   a. The videos were posted by TikTok account @the_real_jay_wade. The name on the account profile was "Jay Wade," and the profile picture depicted a man who looked similar to WADE when I compared the photo to his driver's license photo.

   b. One video, which was posted to the account on August 28, 2024, depicted a Geissele Automatics AR-15-style rifle with a suspected auto sear or auto trip installed. While the video played, a male's voice said, "Stop being a bitch. Drill that third hole." In my training, knowledge, and experience, "third hole" refers to an additional hole drilled into the receiver of an AR-15-style rifle for the purpose of adding an auto sear to make the rifle fully automatic. A fully automatic rifle is a machinegun under federal law.

3

    c. A second video, posted to the account on December 17, 2023, depicted a man shooting a rifle that appeared to be fully automatic. The video had a text caption reading, "Colt/Geissele 10.3 MK18 Select Fire." Another TikTok user commented on the video, "Dang, Josh! A machine gun, why?" The "Jay Wade" account responded, "if you'd ever shoot one you'd understand lol."

9. During the course of my investigation, I learned that agents with the Department of Homeland Security, Homeland Security Investigations ("HSI") were investigating WADE for child pornography offenses. As part of their investigation, HSI agents obtained a federal search warrant for WADE's residence in Lewisburg, Greenbrier County, West Virginia. I agreed to assist HSI in the search in the event any illegal firearms were found inside the residence.

10. The search warrant was executed on July 14, 2025. ATF Special Agent Keith Martin ("SA Martin") and I were present, along with HSI personnel and local law enforcement. During the search of a safe in the master bedroom, the search team found two firearms, a silencer, and a firearm parts kit that I later seized. Upon inspecting the items, SA Martin and I concluded that based on our training, knowledge, and experience, one of the firearms (specifically, a Geissele Automatics, model SD-556, 5.56mm rifle) was a suspected machinegun due to the drilled hole for an auto sear in the lower receiver. The other firearm (a Palmetto State Armory, model PA-15, multi-caliber rifle) appeared to be a short-barreled rifle. The firearm parts kit contained an auto sear commonly used in M-16-style rifles and their variants and a jig that could be used to convert a firearm from a semi-automatic to an automatic firing system.

11. The same day the search warrant was executed, SA Martin and I interviewed WADE's girlfriend. She told us that she had two pistols inside the residence but did not own any rifles. She also said there was a gun safe in the master bedroom where WADE kept two rifles.

WADE's girlfriend acknowledged that he was interested in firearms and had said in the past that he wanted a machinegun. She stated that she had been with him when he purchased firearms parts and that she knew he had taken videos with his phone of himself shooting firearms.

12. WADE was not present at the residence when the search warrant was executed. Local law enforcement conducted a traffic stop of his vehicle while he was on the way to work on July 14, 2025, and arrested him on a federal criminal complaint for a child pornography charge. The Subject Device was seized during the traffic stop.

13. After his arrest, HSI Special Agent Andrew Hayden and I interviewed WADE at the Greenbrier County Sheriff's Office. WADE waived his *Miranda* rights and agreed to speak with us. During the interview, WADE admitted that both of the rifles found in the gun safe belonged to him. He confessed that he had converted the Geissele Automatics rifle into a machinegun by using the jig in the parts kit to drill a hole into the lower receiver of the firearm for the auto-sear pin to slide into. He stated that he had bought the receiver and jig online and explained that he followed the special forces community and used the trigger setup common in that community. WADE also admitted that the Palmetto State Armory rifle was an unregistered short-barreled rifle.

14. The federal search warrant for WADE's residence also authorized HSI personnel to forensically examine any electronic devices seized pursuant to the warrant and search for evidence of child pornography offenses. On September 12, 2025, I learned that in the course of reviewing the Subject Device for evidence of child pornography offenses, HSI Certified Forensic Analyst Leland Pickering discovered pictures of firearms on the device. I am now seeking this search warrant to review and seize that evidence.

## AFFIANT'S KNOWLEDGE OF CELLULAR TELEPHONES AND THEIR USE IN CRIMINAL ACTIVITY

15. I am familiar with cellular telephones or mobile telephones. I know that a cellular telephone or mobile telephone is a handheld wireless device used primarily for voice communications between parties in remote locations.

16. I am aware that cellular telephones usually include a "call log," which records the telephone number, date, and time of calls made to and from the phone.

17. In addition to enabling voice communications, I know that cellular telephones now offer a broad range of functions, which include, but are not limited to: storing names and phone numbers in electronic address books or contact lists; sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving videos; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; accessing and downloading information from the internet; and sending, receiving, and storing Global Positioning Systems ("GPS") coordinates of a phone's location.

18. Based on my knowledge, training, and experience, I know that cellular phones, such as the Subject Device, can store electronic information for long periods of time, even if that information has been deleted. I also know that since it was seized, the Subject Device has been stored in such a manner that the data on the device at the time it was seized has been preserved.

19. In my experience, it is common for cellular telephones possessed by individuals who illegally possess firearms to contain evidence of their illegal activity, including call logs, text messages, stored emails, contact lists, photographs and video images of firearms, and other information.

6

20. I also know from my training and experience that the electronic memories of cellular telephones, including social media applications, have been found to contain evidence of illegal firearm possession, including communications regarding when and how an illegal firearm was obtained, who obtained the illegal firearm for the possessor, and the motivation for possessing the illegal firearm. Generally, historical data regarding the prior possession of firearms, including voice messages, text messages, and contact information, will be stored in the cellular telephone.

21. I also know that people who illegally possess firearms frequently take, or cause to be taken, photographs or other images of themselves in possession of firearms, their associates, and their property and assets with cellular telephones. They also frequently utilize cellular telephones to purchase firearms and/or firearm parts and accessories.

22. Cellular telephone capabilities sometimes include GPS, which calculates the device's geographical location by receiving information from GPS satellites. This includes GPS data associated with metadata in photograph and video files and databases from applications that use GPS data in their operation. This location information can also come from cellular towers and wi-fi networks with which the device has interacted. The records obtained from wireless network connections could give clues to a device's historical locations. By determining the physical location associated with the cell phone, investigators can understand the chronological and geographic context of the cellular telephone and use relating to the crime(s) under investigation. Such information allows investigators to understand the geographic and chronological context of cellular telephones access, use, and events relating to the crime(s) under investigation.

23. I also know that examining data on cellular telephones such as the Subject Device can reveal who possessed or used the cellular telephone, similar to "indicia of occupancy" when searching a residence.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the Subject Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Subject Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

8

team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Subject Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Subject Device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

28. Based upon the foregoing facts, I believe there is probable cause for the issuance of a search warrant for the Subject Device listed in Attachment A, to seek evidence related to violations of 18 U.S.C. § 922(o) (unlawful possession of a machinegun) and 26 U.S.C. § 5861(c) (possession of a firearm made in violation of the National Firearms Act).

29. The applied-for warrant would authorize the imaging, examination and analysis of the Subject Device for the purpose of identifying electronically stored data, particularly described in Attachment B.

Respectfully submitted,

*Joseph Reed*
Joseph Reed, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to by telephone in accordance with Fed. R. Crim. P. 4.1 and 41(d)(3) this 19th day of September, 2025.

Honorable Dwane L. Tinsley
United States Magistrate Judge